**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 20 CR 77 |
| | ) | Hon. Judge Kennelly |
| KENNETH COURTRIGHT | ) | |

**DEFENDANT COURTRIGHT'S MOTION TO DISMISS THE INDICTMENT**

Now comes the Defendant, Kenneth Courtright, by and through his undersigned attorneys, and respectfully moves this Honorable Court for an order dismissing the Indictment. In support, Mr. Courtright states the following:

**I. BACKGROUND**

On June 17, 2020, the Grand Jury returned a 7-count indictment charging Kenneth Courtright with wire fraud in violation of 18 U.S.C. § 1343. *See* Dkt. 30. Generally, the indictment alleges that Mr. Courtright operated a Ponzi Scheme. *Id.* at ¶ 3. It states that Mr. Courtright's company, Today's Growth Consultant ("TGC"), entered into Consulting Performance Agreements ("Agreements") with investors who provided an upfront fee in exchange for TGC's commitment to purchase, maintain, or create revenue-generating websites. *Id.* at ¶ 1b. These Agreements guaranteed investors a monthly return of a percentage of the advertising revenue generated by the websites or at least 15% of the investor's upfront fee. *Id.* at ¶ 1c. The Agreements further stated that the upfront fees would be used for the costs associated with creating and maintaining the revenue-generating websites. *Id.* at ¶ 1b. However, according to the indictment, Mr. Courtright instead used the new investor's upfront fees to make the monthly payments he owed to other investors. *Id.* at ¶ 3.

Each count of the indictment includes one instance of wire fraud and incorporates the description of the overall scheme to defraud originally set out in Count I. *Id.* at ¶¶ 1-13. Specifically, it states that from January 2015 to December 2019, Mr. Courtright (1) misrepresented to investors

1

that TGC was financially sound and able to meet its financial commitments when he knew TGC was using upfront fees to pay its investors; *Id.* at ¶ 4, (2) recruited new investors to TGC for the purpose of using their upfront fees to pay the other investors; *Id.* at ¶ 6, (3) made false statements to investors about the nature of an investment in TGC for the purpose of obtaining more money to use towards monthly payments owed to other investors; *Id.* at ¶ 7, and (4) created and appeared in promotional videos soliciting investments that he knew contained false statements, including that upfront fees would be used solely to build or purchase websites. *Id.* at ¶ 11. It further claims that Mr. Courtright did much of the same to solicit additional funds from existing TGC investors and states that he concealed acts in furtherance of the scheme and lied about whether he operated TGC as a Ponzi scheme when confronted by investors. *Id.* at ¶ 10-12.

Finally, each count of the indictment contains an additional allegation that is the subject of this motion. It alleges that Mr. Courtright used TGC funds "for his own personal benefit, including for mortgage payments on his home in Minooka and private school tuition." *Id.* at ¶ 8. While the other allegations in the indictment are hallmarks of a traditional Ponzi scheme, this claim describes a separate scheme. As such, its inclusion in each count renders the indictment duplicitous.

## II.   ARGUMENT

Each count in the indictment contains a description of two separate schemes and thus, the indictment is duplicitous and must be dismissed. An offense properly charged in a single count must be "of the same or similar character," "based on the same act or transaction," or "part of a common scheme or plan." Fed. R. Crim. P. 8(a). A count is duplicitous if it "charges more than one distinct and separate offense." *United States v. Berardi*, 675 F. 2d 894, 897 (7th Cir. 1982). "The overall vice of duplicity is that the jury cannot in a general verdict render its findings on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or both." *United States v. Buchmeier*, 255 F.3d 415, 425 (7th Cir. 2001) (internal citations omitted).

Where a defendant challenges the government's allegations of a scheme on duplicity grounds, courts analyze, "(1) whether defendant's alleged actions may legitimately be regarded as a single course of conduct during a discrete time period; and (2) whether defendant would be prejudiced by prosecution on a single-count basis." *United States v. O'Brien*, No. 17 CR 239-1, 2017 WL 5192032 (N.D. Ill. Nov. 9, 2017), *aff'd* 953 F.3d 449 (7th Cir. 2020). Here, the government's indictment describes a scheme to defraud in each count, but its allegations include actions that are too separate to be regarded as a single course of conduct. Mr. Courtright will be prejudiced if he is prosecuted on the Indictment as it is written because he could be convicted by a less than unanimous verdict or subjected to double jeopardy in a subsequent prosecution for any number of acts taking place between January 2015 and December 2019. Thus, the indictment is duplicitous and must be dismissed.

### A. The Indictment Charges Acts That Are Not a Part of a Single Overarching Scheme in Each Count

Each count of the indictment includes acts that are not a part of the Ponzi scheme with which Mr. Courtright is charged. Generally, schemes to defraud are "multi-faceted and therefore the various means used in committing the offense may be joined without duplicity." *United States v. Zeidman*, 540 F.2d 314, 318 (1967). However, the line between multiple offenses and multiple means to accomplish a single continuing offense can be difficult to draw. *See e.g.*, *United States v. Tanner*, 471 F. 2d 128 (7th Cir. 1972). In determining whether several acts constitute a single scheme, the Court may consider whether the acts have a "sufficiently close nexus with one another." *Zeidman*, 540 F.2d at 317.

In its indictment, the government has made clear that the scheme to defraud with which Mr. Courtright is charged is specifically a Ponzi scheme. *See* Dkt. 30, ¶¶ 3, 10, 12. A Ponzi scheme is a type of fraud requiring "an ever-increasing stream of investors in order to fund obligations to the earlier investors, with a resulting pyramiding of the liabilities of the enterprise." *United States v.*

3

*Shelton*, 669 F.2d 446, 467 n.2 (7th Cir. 1982). In this type of scheme, someone convinces investors to purchase interests in an unprofitable venture, "paying off old investors with the money from new investors." *United States v. Masten*, 170 F.3d 790, 797 quoting *United States v. Brown*, 47 F.3d 198, 201 n.1 (7th Cir. 1995). The hallmark of a Ponzi scheme is to "convince potential investors that capital supplied by investments is in fact profit." *Masten*, 170 F.3d at 797-98 (internal citations omitted). One of the two schemes to defraud described in each count of the indictment meets this definition: Mr. Courtright is accused of soliciting upfront fees from investors and using those upfront fees to pay off the monthly returns guaranteed to old investors, all to maintain the appearance that TGC was profitable and to solicit new investors.

      The allegation that Mr. Courtright was using company funds for his personal benefit is a separate scheme that is not sufficiently interrelated to the Ponzi scheme. While there are commonalities, such as Mr. Courtright's alleged involvement and a general misuse of funds, the differences indicate this is not one continuing course of conduct. In the second scheme, Mr. Courtright is accused of transferring money from TGC's principal bank account to third parties to pay for his personal expenses, including his mortgage and private school tuition. Dkt. 30, ¶ 8. This scheme allegedly involves co-mingling investor funds with loan proceeds and diverting money from TGC's account to Mr. Courtright's personal account that he shares with his wife. *See* Dkt. 1, ¶¶ 37-38. While the purpose of a Ponzi scheme is to solicit new investors to pay returns owed to existing investors, in this second scheme, Mr. Courtright is allegedly soliciting investments for an entirely different purpose – to pay his own bills.

      The government has been explicit in labeling the scheme to defraud here as a Ponzi scheme and that is consistent with every other allegation contained in its description of the scheme. Soliciting investor funds to pay one's personal expenses may be a scheme to defraud, but it not a Ponzi scheme. As such, there are 2 schemes alleged in each Count of the indictment, rendering it

4

duplicitous. Accordingly, this Court should reject the government's attempt to charge two separate schemes as one continuing course of conduct.

### B. Mr. Courtright would be unfairly prejudiced if forced to proceed to trial on the Indictment as drafted

Mr. Courtright would be prejudiced by prosecution on the basis of this duplicitous indictment. "The dangers posed by a duplicitous indictment include the possibility that the defendant may not be adequately notified of the charges against him, that he may be subjected to double jeopardy, that he may be prejudiced by evidentiary rulings at trial, and that he may be convicted by a less than unanimous verdict." *United States v. Berardi*, 675 F.2d 894, 899 (7th Cir. 1982).

These dangers are present here. As written, the indictment does not provide Mr. Courtright with adequate notice of what conduct is considered a part of this scheme and thus poses a risk of confusion as to the basis of the verdict. The jury could find Mr. Courtright guilty of any of the wire fraud counts based on either of two theories: the funds were solicited in furtherance of the Ponzi scheme, or the funds were solicited to pay Mr. Courtright's personal expenses. Were the jury to find that Mr. Courtright did not use a specific investor's funds as a part of the alleged Ponzi scheme, the jury could still find Mr. Courtright guilty if it found "some of those funds" went to anything qualifying as "for his own personal benefit." Dkt. 30, ¶ 8. The government's ability to proceed on either theory creates the additional risk that Mr. Courtright could be prejudiced by evidentiary rulings at trial as evidence of one scheme may now be admissible to prove the other.

Further, the duplicitous indictment may prevent Mr. Courtright from invoking double jeopardy in a subsequent prosecution for the same offense. The scheme to defraud is alleged to have occurred from January 2015 to December 2019. While the government has charged 7 instances of wire fraud, its indictment appears to embrace thousands of separate transactions during that time as a part of the alleged scheme to defraud, some of which would include using upfront fees to pay investor returns to disguise such funds as profit and some of which would include using upfront fees to pay

5

personal expenses. As such, the government could later try to charge Mr. Courtright with additional counts of wire fraud based on these same transactions, arguing that the instant case was a prosecution for the Ponzi scheme only. The duplicity in the indictment will make it difficult to determine whether a conviction rests on the Ponzi scheme, the use of company funds to pay personal expenses, or both. Therefore, this Court should dismiss the indictment.

### III. CONCLUSION

For the reasons described above, Mr. Kenneth Courtright respectfully requests that this Court issue an order dismissing the Indictment against him as duplicitous.

Respectfully submitted,

*/s/ Nishay K. Sanan*
nsanan@aol.com

Respectfully submitted,

*/s/ Cece White*
cece@sananlaw.com

Nishay K. Sanan, Esq.
53 W. Jackson Blvd., Suite 1424
Chicago, Illinois 60604
Tel: 312-692-0360
Fax: 312-957-0111