UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KENNETH D. COURTRIGHT | No. 20 CR 77<br><br>Judge Matthew F. Kennelly |

GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS

The United States of America, by JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, responds to defendant Kenneth Courtright's motion to dismiss the indictment as duplicitous. For the reasons stated below, defendant's motion should be denied.

I.  **Procedural Background**

On June 17, 2020, an indictment was returned charging defendant with seven counts of wire fraud, in violation of Title 18, United States Code, Section 1343. The indictment alleges that defendant, through his company, Today's Growth Consultant ("TGC"), entered into Consulting Performance Agreements with investors. (Doc. #30 at ¶ 1.a and ¶ 1.b.) The Consulting Performance Agreements are alleged to have stated that investor funds would be used exclusively for the purchase, maintenance, marketing, or creation of websites designed to generate advertising revenue. (*Id*. at ¶ 1.b.) In addition, the Consulting Performance Agreements are alleged to have guaranteed investors a monthly payment in an amount tied to either the advertising revenue generated or the amount provided by the investor. (*Id.* at ¶ 1.c.) Finally, the Consulting Performance Agreements are alleged to have represented to investors that TGC was financially solvent. (*Id.* at ¶ 1.d.)

The indictment alleges that defendant engaged in a scheme to defraud the TGC investors. The allegations include that defendant misrepresented to investors, both orally and through the

Consulting Performance Agreements, that their funds would be used solely to purchase, create, market, or maintain websites designed to generate revenue for the investor, when in fact defendant intended to and did use the investor funds to run a Ponzi scheme. (*Id.* at ¶ 3.) That is, defendant is alleged to have used money he received from investors pursuant to the Consulting Performance Agreements to make monthly payments owed to other investors as part of their own Consulting Performance Agreements. (*Id.*) In addition, the indictment alleges that as part of the scheme defendant knowingly used some of the investor funds not to purchase, create, or maintain websites, but instead for his own personal benefit, including for mortgage payments on his home and private school tuition. (*Id.* at ¶ 8.)

The indictment contains seven counts. Each count incorporates by reference the background and scheme allegations in Count One. Also, each count contains, as an execution of the scheme, a unique wire transfer of an investor's funds into a TGC bank account.

On July 7, 2021, defendant filed a motion to dismiss the indictment. (Doc. #64.) In his motion, defendant argues that the indictment is duplicitous because it alleges two schemes to defraud, one involving investor funds used as part of a Ponzi scheme and another where investor funds were used for defendant's own personal use.

## II.     Legal Standards

Federal Rule of Criminal Procedure 7(c)(1) provides that an "indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." The Seventh Circuit has explained that "[a]n indictment is legally sufficient if it (1) states all the elements of the crime charged; (2) adequately informs the defendant of the nature of the charges so that he may prepare a defense; and (3) allows the defendant to plead the judgment

as a bar to any future prosecutions." *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010) (citations omitted).

"To successfully challenge the sufficiency of an indictment, a defendant must demonstrate that the indictment did not satisfy one or more of the required elements and that he suffered prejudice from the alleged deficiency." *United States v. Vaughn*, 722 F.3d 918, 925 (7th Cir. 2013). "The test for validity is not whether the indictment could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *Id.* (*citing United States v. Hausmann*, 345 F.3d 952, 955 (7th Cir. 2003)). Moreover, indictments are to be "reviewed on a practical basis and in their entirety, rather than 'in a hypertechnical manner.'" *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000) (*quoting United States v. McNeese*, 901 F.2d 585, 602 (7th Cir. 1990)).

A count is duplicitous if it "charges two or more distinct offenses within a single count." *United States v. Miller*, 883 F.3d 998, 1003 (7th Cir. 2018). A count is not duplicitous, however, if it charges the commission of a single offense by different means, or if it charges acts that "comprise a continuing course of conduct that constitutes a single offense." *Id.*; *see also*, *United States v. Davis*, 471 F.3d 783, 790-91 (7th Cir. 2006) ("where the indictment fairly interpreted alleges a continuing course of conduct, during a discrete period of time, the indictment is not prejudicially duplicitous.") (internal quotations and citations omitted).

For wire fraud charges, each wiring in furtherance of a scheme to defraud is a separate and distinct offense. *See United States v. Tadros*, 310 F.3d 999, 1006 (7th Cir. 2002); *United States v. Hammen*, 977 F.2d 379, 382-83 (7th Cir. 1992). While each count that charges a scheme to defraud is required to have an execution, "the law does not require the converse: each execution need not

give rise to a charge in the indictment." *United States v. O'Brien*, 953 F.3d 449, 454 (7th Cir. 2020) (*quoting Hammen*, 977 F.2d at 383).

In addition, the term "scheme to defraud" as used in the wire fraud statute describes a "broad range of conduct." *United States v. Doherty*, 969 F.2d 425, 429 (7th Cir. 1992). "Schemes to defraud . . . often are multi-faceted and therefore the various means used in committing the offense may be joined without duplicity." *O'Brien*, 953 F.3d at 454 (ellipsis in original) (*quoting United States v. Zeidman*, 540 F.2d 314, 318 (7th Cir. 1976)). "The line between multiple offenses and multiple means to the commission of a single continuing offense is often a difficult one to draw. The decision is left, at least initially, to the discretion of the prosecutor." *United States v. Berardi*, 675 F.2d 894, 898 (7th Cir. 1982) (citation omitted).

### III. Argument

The indictment is facially valid, alleging in each count the necessary elements of the wire fraud statute, 18 U.S.C. § 1343. *White*, 610 F.3d at 959. Defendant does not argue otherwise. He instead contends that the indictment is duplicitous because two of the means alleged as part of the scheme to defraud—using investor funds to pay returns to older investors in the form of a Ponzi scheme and to pay for defendant's personal expenses—are too separate to be a single course of conduct and do not share a sufficiently close nexus to one another. That is incorrect. Defendant's argument ignores that one person (the defendant) told the same set of false statements (funds would be used for website purchase or development) during the same time period (January 2015 to December 2019) to the same class of victim (the investors) with the same goal (to obtain the investors' money). That constitutes a single scheme to defraud. Using the money obtained through

fraud in different ways does not create a second scheme. It only proves the falsity of the lies defendant initially told to investors.

Courts have regularly rejected duplicity challenges in cases with much greater differences in the scheme allegations than anything defendant has identified in this case. *See, e.g.*, *O'Brien*, 953 F.3d at 455 (rejecting duplicity challenge where scheme involved different time periods, properties, people, and false statements, because of commonalities in lies, victims, and goal of obtaining financing for personal enrichment); *Zeidman*, 540 F.2d at 318 (rejecting duplicity challenge in debt collection fraud case where scheme alleged that defendant defrauded both creditors/clients and debtors in numerous transactions involving many misrepresentations, and explaining that mail fraud schemes are "multi-faceted" and that the offense conduct had a sufficient nexus to be considered one scheme); *United States v. Mason*, No. 15-CR-102, 2016 WL 2755401, at *2 (N.D. Ill. May 12, 2016) (no duplicity in case involving defendant who submitted false documents to receive payment from parties defendant had contracts with, including City of Chicago and three out-of-state government entities, reasoning that conduct "occurred during the same two year span, targeted the same class of victims, and utilized the same sort of fraudulent communications."); *United States v. Freed*, No. 13-CR-951, 2016 WL 374133, at *2-3 (N.D. Ill. Feb. 1, 2016) (rejecting duplicity challenge in fraud scheme where defendants defrauded both their joint venture partners and bankers using numerous different misrepresentations in order to obtain money to pay operating expenses for defendant's business); *United States v. Hollnagel*, No. 10-CR-195, 2011 WL 3664885, at *4, 9-10 (N.D. Ill. Aug. 19, 2011) (no duplicity in nine-year fraud scheme where defendants obtained money from numerous investors and financial institutions and where scheme involved both misrepresentations to lenders and bribes, citing *Zeidman* and noting

that defendants had same goals: obtaining financing and enriching themselves); *United States v. Brown*, 894 F. Supp. 1150, 1154 (N.D. Ill. 1995) (concluding that conduct of thirteen defendants who cashed stolen and forged checks at 22 different banks over a span of two and one-half years constituted one scheme to defraud).

The allegations in this case are all part of a unified scheme to defraud investors who invested in TGC based on defendant's false statements. Defendant's requested relief would result in two schemes, potentially in two different indictments with two different trials, against the same defendant who told the same false statements to the same victims/witnesses, and then used the funds derived from those same material falsehoods for related ends (*i.e.*, perpetuating the fraud by paying off older investors in a Ponzi scheme, while also personally enriching defendant). That makes no sense, and shows that the allegations in the indictment are part of a single scheme to defraud.

What defendant is really arguing is that the government needs to allege additional executions as part of the scheme related to both the Ponzi payments and the misappropriation of funds for his own personal benefit. As noted above, however, the government is not required to allege every execution as part of a scheme to defraud. *See O'Brien*, 953 F.3d at 454.

Moreover, the dangers associated with a duplicitous indictment–namely, "the possibility that the defendant may not be adequately notified of the charges against him, that he may be subjected to double jeopardy, that he may be prejudiced by evidentiary rulings at trial, and that he may be convicted by a less than unanimous verdict"—are not present in this case. *Berardi*, 675 at 899 (citations omitted).

6

Defendant first claims that the indictment does not provide him adequate notice of what conduct is considered a part of the scheme. However, he fails to elaborate on what is missing. The charges in the indictment are clear and detailed, and put him on notice of the charged scheme.

Defendant also speculates that confusion may result from any verdict if the charges as alleged were to stand because proof related to one part of the scheme may be used to convict on the other. But the allegations in the indictment all relate to one unified scheme centered around false statements defendant made and caused to made to investors about the nature of their investment in TGC. Defendant does not explain how his use of funds, whether for Ponzi payments or personal expenses, may confuse that issue. Significantly, defendant's use of the funds as alleged in the indictment is not an element of the offense. Instead, those allegations are the means he used to commit an element of the crime.

Furthermore, to the extent defendant is arguing that unanimity is required as to the specific means used in the fraud scheme, he is wrong. The elements necessary to prove a fraud scheme do not include the specific means alleged in the indictment; thus, unanimity by the jury as to the specific fraudulent representations is not required. *See, e.g.*, *United States v. Daniel*, 749 F.3d 608, 614 (7th Cir. 2014) (rejecting specific unanimity instruction and finding that fraudulent representations and omissions by defendant were "underlying brute facts" of the verdict that "were merely the means he used to commit an element of the crime.").

Finally, defendant's argument that the indictment as alleged may prevent him from invoking double jeopardy in a subsequent prosecution is also incorrect. He claims that because the government has only charged seven executions as part of the scheme, charges could be brought

7

against him in the future alleging additional wirings on the theory that this case was based on the Ponzi scheme only.

First, as noted above, the government is not required to charge every execution as part of a scheme to defraud. *O'Brien*, 953 F.3d at 454. Second, this claim is entirely speculative and rebutted by the allegations in the indictment, which list the time-period of the fraud and allege that defendant used investor funds both for Ponzi payments and for his own personal expenses. These allegations are certainly detailed enough to allow defendant to raise double jeopardy issues in the future under controlling precedent. *See United States v. Patterson*, 782 F.2d 68, 72 (7th Cir. 1986) (analyzing double jeopardy under two standards, first, whether each statutory offense requires proof of a fact that the other offense does not, and second, collateral estoppel of issues already decided).

Since the indictment sets forth the statutory elements of the charged crime, the dates of the conduct at issue, and contains detailed allegations concerning the means defendant used to defraud investors, it provides defendant with adequate notice and an adequate opportunity to raise double jeopardy in future. *See White*, 610 F.3d at 959 ("The indictment here tracks the language of the statute, and lists each element of the crime . . . . We look only to see if an offense is sufficiently charged, and on its face, this indictment adequately performs that function."); *United States v. Coscia*, 100 F. Supp. 3d 653, 656 (N.D. Ill. 2015) ("[A]n indictment that tracks the words of a statute to state the elements of a crime is acceptable, provided that it states sufficient facts to place a defendant on notice of the specific conduct at issue.").

In sum, none of defendant's arguments have merit. The allegations in the indictment set forth a unified scheme to defraud, and there are no duplicity concerns posed by the indictment as

it currently stands. As such, there is no basis for the indictment to be dismissed, and defendant's motion should be denied.

## IV. Conclusion

For the reasons stated above, defendant's motion to dismiss should be denied.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: /s/ Jason A. Yonan
JASON A. YONAN
Assistant U.S. Attorney
219 S. Dearborn St, Rm. 500
Chicago, Illinois 60604
(312) 353-0708

Dated: July 19, 2021