**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 20 CR 77 |
| | ) | Hon. Judge Kennelly |
| KENNETH COURTRIGHT | ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE**
**TO HIS MOTION TO DISMISS THE INDICTMENT**

Now comes the Defendant, Kenneth Courtright, by and through his undersigned attorneys, and in reply to the government's response to his motion to dismiss the indictment as duplicitous, states the following:

**I. ARUGMENT**

The government mischaracterizes Defendant's arguments multiple times in its response. It claims that Mr. Courtright agrees that its indictment is valid and only argues that the indictment is duplicitous (Doc. 66, p. 4). This is incorrect. First, duplicity is a defect in the indictment. *See* Fed. R. Crim. P. 12(3)(B)(i). More specifically, as the government states in its response, an indictment is legally sufficient if it (1) states all the elements of the crime charged; (2) adequately informs the defendant of the nature of the charges so that he may prepare a defense; and (3) allows the defendant to plead the judgment as a bar to any future prosecutions." *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010). "To successfully challenge the sufficiency of an indictment, a defendant must demonstrate that the indictment did not satisfy one or more of the required elements and that he suffered prejudice from the alleged deficiency." *United States v. Vaughn*, 722 F.3d 918, 928 (7th Cir. 2013).

In his motion to dismiss, Mr. Courtright argues that the indictment did not satisfy one or more of the required elements, specifically he argues that by including two separate schemes in each

1

count, the indictment failed to adequately inform him of the nature of the charges against him and created a risk that he may be subjected to double jeopardy, thereby prejudicing him. It is clear that Mr. Courtright does argue that the government's indictment is invalid in his motion to dismiss the indictment.

Further, the government claims that "what defendant is really arguing is that the government needs to allege additional executions as part of the scheme…" (Doc. 66, p. 6). This is also incorrect. Mr. Courtright does not contest that "while each count that charges a scheme to defraud is required to have an execution, the law does not require the converse: each execution need not give rise to a charge in the indictment." (*Id.* at pp. 3-4) citing *United States v. O'Brien*, 953 F.3d 449, 454 (7th Cir. 2020). However, the executions of wire fraud as they are charged here must each be a part of the same scheme to defraud. "If several fraudulent executions *are part of the same scheme*, the government has discretion to (a) charge each execution in a separate count or (b) "allege only one execution of an ongoing scheme that was executed numerous times." *United States v. O'Brien*, No. 17 CR 239, 2017 WL 5192032 (N.D. Ill. Nov. 9, 2017) (Emphasis added). Here, the government charges two schemes and one execution in every Count.

The Defendant's argument is not that the government has no discretion to choose which executions of wire fraud to allege when they are a part of the same scheme; the Defendant's argument is that the government's chosen executions may not all be part of the same scheme because its indictment describes two separate schemes. Additionally, contrary to the government's claims, the Defendant is not arguing that unanimity is required as to each of the specific fraudulent statements used in a scheme, nor is Defendant seeking relief in the form of two separate trials. (Doc. 66, pp. 6-7).

The real dispute between the parties is whether the government's allegations describing the scheme to defraud are multiple means to the commission of a single continuing offense or if, as

2

Defendant argues, the government's indictment has included allegations of a separate scheme that is far enough removed to render the indictment duplicitous. Mr. Courtright's position is that each count of the indictment includes allegations of a separate scheme, with a separate purpose, and includes no indication of which scheme to defraud the individual executions of wire fraud were meant to carry out. As such, he seeks dismissal of the Indictment.

    a. **The Government Chose to Indict Mr. Courtright by Describing a Ponzi Scheme and a Ponzi Scheme Has a Particular Purpose**

The purpose for which Mr. Courtright allegedly lied to investors is essential to the scheme to defraud with which the government charges him. The Seventh Circuit's Jury Instructions define a scheme as "a plan or course of action formed with the intent to accomplish some purpose." *See* "18 U.S.C §§ 1341 & 1343 Definition of Scheme to Defraud," *Pattern Jury Inst.* (2012). Here, the government explicitly calls its scheme to defraud a Ponzi scheme (Doc. 30, ¶ 3). The purpose of a Ponzi Scheme is "to convince potential investors that capital supplied by investments is in fact profit," by "paying off old investors with the money from new investors," *United States v. Masten*, 170 F.3d 790, 797-98 (7th Cir. 1991).

Despite now claiming that the goal of the scheme was simply, "to obtain the investors' money" (Doc. 66, p. 4), the government's indictment includes allegations directly tied to the traditional purpose of a Ponzi scheme in nearly every paragraph. It states that Mr. Courtright solicited investors so he could "use those funds to make monthly payments promised to other investors," and that Mr. Courtright had to solicit the new investors because TGC "did not create enough revenue to fund the payments guaranteed to investors…" (Doc. 30, ¶¶ 3-4). It states that he caused salespeople to make false statements, "for the fraudulent purpose of obtaining their money to make monthly payments due to other TGC investors," and that when asked about "whether he operated TGC as a Ponzi scheme, defendant Courtright lied and said no" (*Id.* at ¶¶ 7, 12). The

3

alleged misrepresentations and the reasons for soliciting funds are continuously described in this way throughout. (*See Id.* at ¶¶ 5, 6, 7, 9, 10, 11).

As defendant states in his original motion, the only allegation that does not fit within the government's description of the scheme as a Ponzi Scheme is that Mr. Courtright's goal was to pay his personal bills (*Id.* at ¶ 8). If it is the government's position that this one allegation, "proves the falsity of the lies defendant initially told to investors" (Doc. 66, p. 5), it is unclear why the government's indictment devotes so much space to describing a traditional Ponzi scheme.

While the government is correct that schemes to defraud are multi-faceted and sometimes contain various means to the same end, the scheme is formed with the intent to accomplish a purpose and that purpose must be connected to the wire communication. The government has described that purpose at length as a Ponzi scheme but its allegation that Mr. Courtright stole company funds to pay his own bills is not sufficiently related to the purpose of disguising capital as profit to gain more investors. This second scheme appears unconnected to the goals of every other allegation. As such, its indictment should be dismissed.

### b. The Government's Indictment Does Prejudice Mr. Courtright

Finally, the defendant would be prejudiced by the indictment as it is written for the reasons described in his motion, which are detailed more specifically here. It does not allow adequate notice to prepare his defense because the allegation that he paid his own bills with company funds leaves Mr. Courtright guessing at which of thousands of transactions unrelated to the Ponzi Scheme may qualify as "for his own personal benefit." (Doc. 30, ¶ 8). The two schemes would also require the introduction of different evidence. For example, the allegation suggests there could be evidence related to his children's tuition which is not likely relevant to prove that a business owner was operating his business as a Ponzi scheme. Evidence that he used a comingled account to make a personal purchase would not be relevant to prove the existence of a Ponzi Scheme.

4

Further, Mr. Courtright agrees that the government's description of the Ponzi scheme would allow him to raise double jeopardy issues if he were charged with additional executions of wire fraud in furtherance of a Ponzi scheme. However, while the indictment is vague, the other allegations seem to involve his personal bank accounts and family members. Some other transaction in this 4-year time span could conceivably result in future charges that are unrelated to the operation of the business. Mr. Courtright's concern is that while they claim the opposite now, the government could later argue that this case's scheme to defraud is related only to his business, not to his personal transactions.

Additionally, while the government is correct that the jury need not agree unanimously on every fraudulent statement involved in the scheme, the jury still must agree that the defendant participated in the scheme to defraud described by the government, with the intent to defraud, and that the wire communications were in furtherance of that scheme. *See United States v. Sheneman*, 682 F.3d 623, 628 (7th Cir. 2012); *Compare United States v. Daniel*, 749 F.3d 608, 613-614 (7th Cir. 2014) (holding that specific unanimity is not required when multiple false statements are alleged as part of a scheme to defraud) *with United States v. Davis*, 471 F.3d 783, 791(7th Cir. 2006) (holding that if a fraud charge alleges multiple schemes, unanimity regarding the particular scheme is required).

As such, the scheme to defraud with which Mr. Courtright is charged is an essential element to a jury's conviction. As it is currently written, the indictment would make it unclear on which of two schemes a conviction rests – Mr. Courtright's scheme to obtain money to pay his personal expenses or Mr. Courtright's scheme to obtain money to run TGC as a Ponzi scheme. The government could avoid the need to demonstrate a Ponzi Scheme at all despite having included it in every allegation of its Indictment except for the one allegation Mr. Courtright challenges. This issue with a potential jury verdict is the exact concern the Court describes as the "overall vice of

5

duplicity," *United States v. Berardi*, 675 F.2d 894, 897 (7th Cir. 1982). As such, Mr. Courtright seeks dismissal.

## II. CONCLUSION

For these and the reasons stated in Defendant's Motion to Dismiss, Mr. Courtright respectfully requests that this Court grant his motion and dismiss the indictment against him.

Respectfully submitted,

*/s/ Nishay K. Sanan*
nsanan@aol.com

Respectfully submitted,

*/s/ Cece White*
cece@sananlaw.com

Nishay K. Sanan, Esq.
53 W. Jackson Blvd., Suite 1424
Chicago, Illinois 60604
Tel: 312-692-0360
Fax: 312-957-0111