**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **20 CR 777** |
| | ) | **Judge Kennelly** |
| KEN COURTRIGHT | ) | |

**DEFENDANT KEN COURTRIGHT'S MOTION FOR COST SHIFTING TO THE GOVERNMENT FOR NECESSARY AND RELEVANT DISCOVERY MATERIALS, OR, IN THE ALTERNATIVE, FOR THE APPOINTMENT OF COUNSEL UNDER THE CRIMINAL JUSTICE ACT, AND IN ANY EVENT FOR A TRIAL CONTINUANCE**

Defendant, Ken Courtright, by and through his undersigned counsel, respectfully moves this Court for the entry of an Order shifting the cost to the Government for newly discovery and relevant discovery materials or, in the alternative, for the appointment of counsel under the Criminal Justice Act, and in any event for a trial continuance, and states as follows:

1. By way of background, Mr. Courtright's former company, Today's Growth Consultant, Inc. ("TGC"), was the subject of a raid pursuant to which the Securities and Exchange Commission ("SEC") seized all of TGC's computers, servers, network, laptops, and other documents, data, and materials (hereinafter collectively as "the Seized Materials").

2. Accordingly, the SEC is pursuing a case against TGC, which is currently pending in this District before Judge Wood (hereinafter "the SEC Action"). The SEC Action has been stayed pending the resolution of the present case.

3. The Court appointed a Receiver in the SEC Action.

4. The Receiver hired a vendor to forensically process the Seized Materials. Upon information and belief, the Receiver was compensated for the costs of forensically processing the Seized Materials.

5.   The SEC received from the Receiver's vendor only certain of the forensically processed materials that arose out of the Seized Materials.

6.   The SEC, in turn, produced at least some of those materials (if not all) that it received from the Receiver's vendor to the US Attorneys' Office for purposes of the present case.

7.   However, based upon communications between the undersigned counsel and the AUSA prosecuting the present case, it appears that the US Attorneys' Office was *not* informed that, in addition to certain emails that were forensically gathered by the Receiver's vendor, there are other substantial tranches of emails that the Receiver's vendor gathered but did not produce to the SEC. Of course, the SEC did not, in turn, produce those additional tranches of emails to the US Attorneys' Office for purposes of the present case and for production to the Defendant and his counsel in the present case.

8.   As was discussed with this Court during the parties' last status hearing, those additional tranches of emails consist of: 1) the G Suite emails for numerous employees (now former) of TGC, and 2) other emails of other TGC employees that were not part of the G Suite of company emails, but which are nevertheless other TGC company emails.

9.   Defendant and his counsel only recently discovered the existence of the above-referenced tranches of emails after they met and conferred with the Receiver's vendor and the Receiver's counsel in an attempt to obtain direct access to TGC's emails, including direct access to Mr. Courtright's own TGC's emails.

10. Defendant and his counsel further discovered that, in an apparent breach of ESI discovery protocols, the Receiver allowed at least certain email activity to continue on TGC email

system after the Receiver's vendor forensically captured the emails from TGC's system.

11. As recently reported to this Court, the Receiver and its vendor will not provide direct access to the G Suite emails to Mr. Courtright and his counsel, contending that it is not possible to do so. However, the Receiver and its vendor are amenable to providing the production of those G Suite emails, but at an initial cost of a couple thousand dollars to Mr. Courtright and his counsel to produce them. In turn, Mr. Courtright and his counsel would likely have to pay thousand to tens of thousands of additional monies, on a monthly basis, to house those G Suite emails – along with the other documents and data described below.

12. Likewise, the Receiver and its vendor are willing to provide the other (*non*-G Suite) tranches of TGC emails to Mr. Courtright and his counsel, at a cost of several thousand dollars. However, according to the Receiver's vendor, it would be necessary for Mr. Courtright and his counsel to have or purchase certain forensic tools to examine those emails. Moreover, again, Mr. Courtright and his counsel would be required to pay what would likely be thousand to tens of thousands of additional monies, on a monthly basis, to house those *non* G Suite emails housed – along with the other documents and data described above and below.

13. It is seemingly impossible for anyone, including the US Attorneys' Office, to argue that those two separate tranches of emails do not contain documents that are potentially directly relevant to the present case. Indeed, in the present case, the Government alleges, *inter alia*, that TGC was essentially run as a Ponzi or "Ponzi like" scheme. Therefore, the communications of TGC's employees, including but not limited to its principals, executives, managers, and rank and file employees are relevant to those allegations. Likewise, so are TGC's emails with outside

3

individuals.

14. In fact, it is Defendant's counsel's intent at this point to potentially call numerous witnesses, if necessary, in Defendant's own case, who were formerly employed by TGC to provide testimony about how TGC's business was actually operated; how business decisions were made; how TGC's and investors' monies were spent; and to rebut the Government's contention that TGC was operated in a Ponzi or Ponzi like fashion. Moreover, some of those witnesses will likely be called in the Government's own case-in-chief and their emails are expected to rebut, provide context to, or impeach their testimony.

15. In addition, the Government intends to call numerous so-called "victims," who are expected to contend that they did not understand what they were investing in, and that their monies were misspent without their knowledge. The emails to, from, and about, such victim investors are keenly relevant to disproving, undermining, and impeaching such testimony.

16. The difficulty with the production of the above-referenced tranches of emails is not just with respect to the cost of obtaining them from the Receiver's vendor in the first instance. The even substantially greater costs are expected to arise from the processing and housing of those emails during the months that it will take to review them. As noted above, the cost collectively of housing all of the new and to be produced data will likely cost in excess of twenty thousand dollars per month, using an outside service.

17. It should be noted that the volume of emails in those two tranches of emails is likely to be anywhere from three to ten or more times greater that what has been produced to-date in terms of emails. Even more significantly for Mr. Courtright and his counsel, based upon discussions with a disinterested vendor, Percipient, it would likely cost Mr. Courtright and his counsel somewhere

in the range of in excess of twenty thousand dollars per month to house the still as yet unproduced emails, in order to allow their access and review – along with the other data to be collected which is part of this Motion.

18. Thus, in sum, the Receiver seized the above-referenced tranches of emails; did not fully disclose their existence; denied Defendant's request for direct access to them with respect to the G Suite emails; and processed and retained them in such a way, with respect to the *non* G Suite emails, that additional forensic tools are necessary. Now, the Receiver and the Government want Mr. Courtright to pay tens of thousands of dollars just to be in a position to fully and adequately prepare to defend and defend himself in the present case where his liberty is at stake.

19. As discussed with this Court, there are additional, vast amounts of relevant data that likewise were not disclosed to the parties in this case until recently. The Zoom recordings are one such additional batch of data. Those tapes contain communications with TGC and its customers/vendors, including, on information and belief, potentially many of the so-called victim investors in the present case. Even if the Zoom tapes contain recordings of other customers and investors, the tapes are expected to demonstrate that there was nothing fraudulent, misleading, or Ponzi like with respect to the manner that those customers/investors were advised. To the contrary, it is expected that those recordings will reveal that customers/investors were fully and adequately informed of how their money would be and was utilized, and how the TGC was operated.

20. Those Zoom tapes can likewise now be produced, after being disclosed by the Receiver's vendor to the parties in the present case.

21. However, again, the volume of such recordings will, according to the Receiver and its vendor, require Mr. Courtright to pay a couple thousand dollars. More importantly, those Zoom recordings will contribute to the tens of thousand of dollars in monthly charges that Mr. Courtright would have to pay an outside vendor, such as Percipient.

22. Once again, Mr. Courtright should not have to "pay to play" in order to prepare to and defend himself in this federal criminal action where his liberty is at stake.

23. And there is even more that has not been produced, and which has been recently discovery by Mr. Courtright and his counsel. This includes all of TGC's documents, which are a separate part of the G Suite – i.e., different than the G Suite emails discussed above. Those too would likely require Mr. Courtright to go out of pocket several thousand dollars just to obtain them, and they too would add to that twenty thousand dollars or more cost of monthly housing all of this new data.

24. Finally, there is the SLACK electronic data which has not yet been produced, and to-date was never apparently identified by the Receiver's vendor. That SLACK data is essentially an uneraseable form of internal TGC communications, attune to a chat or email system where management, executives, and rank and file employees would engage in communications – including with respect to customer/investor issues. The cost of obtaining and housing that form of ESI because its absence was just discovery by Defendant and his counsel.

25. All of the electronic data sought to be produced in this case should be produced by the Government, and it should bear the cost of doing so. *See, e.g., United States v. Briggs*, Case No. 10 CR 184S, 2011 WL 4017886 (W.D.N.Y., Sept. 8, 2011). These are Rule 16 materials, and the Government is in a better position to produce these materials and to bear the costs

associated with such production. *Id.; see also United States v. Atkinson,* Case No. 22 CR 100

(CM), 2022 WL 814735 (S.D.N.Y., March 16, 2022); *see also United States v. Montague,* Case

No. 14-CR-6136-FPG-JWF, 2016 WL 11621620 (W.D.N.Y., May 17, 2016) ("where the

discovery is complex and voluminous, courts have imposed on the government the

obligation to organize and disclose discovery materials in a process and format that permits

defense counsel to effectively review ESI material and prepare for trial in an efficient and

productive manner").

26. These materials may also be *Brady* and *Giglio* material.

27. To hold otherwise, would deny Mr. Courtright his Due Process rights to be able to

obtain the evidence necessary for his pre-trial and trial preparation, including his Sixth

Amendment rights.

28. Moreover, it would create and encourage a "pay to play" system where some Defendants,

with the necessary monetary resources would be able to fully prepare to defend themselves,

whereas others, like Mr. Courtright, would be entitled to a lesser ability to prepare for trial and

defend themselves because to their lack of such monetary resources.

29. It should be emphasized that, what has not been produced to-date, will likely be greater

than what has been produced, and likely with a multiplier.

30. This is not some fishing expedition. These are the Seized Materials that demonstrate

precisely how Mr. Courtright, along with TGC's Executive, Management, rank and file, and

highly recognized and experienced consultants actually ran and conducted the business of TGC.

31. To the extent that this Court finds that it is Mr. Courtright who has to pay to defend

himself by bearing the cost of the above-referenced ESI, then Mr. Courtright respectfully requests that the undersigned counsel be appointed to represent Mr. Courtright under the Criminal Justice Act. Here, the Receiver has already taken much from Mr. Courtright, and recently suggested that it may pursue a Motion to take his house. Although Mr. Courtright has gainful employment, he is in no position to fund the production and retention of the above-referenced ESI.

32. Regardless of how this Court rules with respect to the above issues, Mr. Courtright and his counsel respectfully request that this Court continue the trial date to allow adequate and legitimate time to prepare for trial. It is simply not possible to go forward in August 2022, as currently scheduled – as much as Mr. Courtright would like to get to trial.

**WHEREFORE**, Defendant, Ken Courtright, by and through his undersigned counsel, respectfully requests the entry of an Order shifting the cost to the Government for newly discovery and relevant discovery materials or, in the alternative, for the appointment of counsel under the Criminal Justice Act, and in any event for a trial continuance, and for such other and further relief as is appropriate.

**Respectfully submitted,**

By: **/s/ Michael I. Leonard**
**Counsel for Mr. Courtright**

**LEONARD TRIAL LAWYERS LLC**
Michael I. Leonard
120 North LaSalle, Suite 2000
Chicago, Illinois 60602
(312)380-6559 (phone)
(312)264-9671 (fax)
mleonard@leonardtriallawyers.com

8

## <u>CERTIFICATE OF SERVICE</u>

The undersigned states that, on May 19, 2022, he EFILED by way of this Court's ECF filing system, the above Motion, and therefore served them upon all counsel of record.

By:<u>/s/ Michael I. Leonard          </u>
    **Counsel for Mr. Courtright**