**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | **Case No. 20 CR 77** |
| v. | ) | |
| | ) | **Judge Kennelly** |
| KENNETH COURTRIGHT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT KEN COURTRIGHT'S RENEWED MOTION,[1] PER RULE 29
OF THE FEDERAL RULES OF CRIMINAL PROCEDURES FOR JUDGMENT
OF AQUITTAL**

Defendant, Mr. Courtright, by and through his undersigned counsel, respectfully moves

for the entry of an Order pursuant to Rule 29 of the Federal Rules of Criminal Procedure,

acquitting him on all Counts, and states as follows:

**I.     Introduction**

This Court should grant Mr. Courtright's Rule 29 Motion because, as further set forth

below, the Government failed to provide any basis from which any reasonable jury could

possibly determine - based upon anything other than speculation - that Mr. Courtright made any

material false statements in connection with the transactions that are the subject of the individual

Counts through VII. Indeed, the Government wholly failed to establish that any statement made

by Mr. Courtright, *which forms the basis of any of those Counts*, was false. In addition, with

respect to certain of the Counts, the Government failed both to establish the falsity of the

---

[1] Mr. Courtright also incorporates herein, as though fully set forth, all of the arguments that he
made verbally before this Court in support of his Rule 29 Motion at the close of the
Government's case.

statements and their materiality. At best, the Government introduced certain "false" statements

made by Mr. Courtright, while failing to tie those particular statements to the particular

transactions that were the subject of the individual Counts.

**II.**     **Rule 29**

Rule 29 of the Federal Rules of Criminal Procedure provides in pertinent part:

Rule 29. Motion for a Judgment of Acquittal
(a) Before Submission to the Jury. After the government closes its evidence or after the
close of all the evidence, the court on the defendant's motion must enter a judgment of
acquittal of any offense for which the evidence is insufficient to sustain a conviction. The
court may on its own consider whether the evidence is insufficient to sustain a
conviction. If the court denies a motion for a judgment of acquittal at the close of the
government's evidence, the defendant may offer evidence without having reserved the
right to do so.

(b) Reserving Decision. The court may reserve decision on the motion, proceed with the
trial (where the motion is made before the close of all the evidence), submit the case to
the jury, and decide the motion either before the jury returns a verdict or after it returns a
verdict of guilty or is discharged without having returned a verdict. If the court reserves
decision, it must decide the motion on the basis of the evidence at the time the ruling was
reserved.

(c) After Jury Verdict or Discharge . .  A defendant may move for a judgment of
acquittal, or renew such a motion . . . after a guilty verdict . .

*Id.*

In assessing a defendant's Rule 29 motion, a court must determine – "after viewing the

evidence in the light most favorable to the government," whether "any  rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt." *United State v.*

*Elizondo*, 21 F.3d 453 (7th Cir. 2021) (citations omitted). A defendant's Rule 29 motion should

be granted where "the record contains no evidence, regardless of how it is weighed, from which

the [factfinder] could find guilt beyond a reasonable doubt." *Id.* (citations omitted).

### III.     Argument: The Evidence Was Insufficient To Prove Mr. Courtright Guilty Beyond A Reasonable Doubt

**Arguments Applicable To All Counts**

***Contractual Provisions Regarding The Company's Financial Condition, At The Time The Investments In Counts I Through VII Were Made***

The Government made the calculated but inexplicable choice *not* to provide any testimony at trial from its own witnesses regarding the meaning or interpretation of the wholly undefined and vague contractual provisions that it claimed made Mr. Courtright's statements materially false, i.e., the provisions to the effect that the Company was *not* "insolvent" and/or that it was "solvent;" that the Company was then able to pay its bills "when due;" and that the Company was in a "satisfactory financial condition" and/or was *not* in an unsatisfactory financial condition.

More importantly, the Government similarly made the calculated but inexplicable choice, not to elicit any testimony at trial from its own witnesses to establish that the Company - *at the time any of the particular investments were made that constituted the basis for Counts I through VII* - was in fact actually "insolvent" and/or *not* "solvent;" unable to pay its bills "when due;" or was not in a "satisfactory financial condition." In fact, the Government's witnesses *admitted*, on cross-examination, that they were *not* providing any opinions as to whether the Company - *at the time any of the particular investments were made that constituted the basis for Counts I through VII* was actually "insolvent;" unable to pay its bills "when due;" or not in a "satisfactory financial condition" (whatever that means).

Accordingly, there was no basis upon which the jury could have found that the Company - *at the time any of the particular investments were made that constituted the basis for Counts I through VII* – was actually "insolvent;" unable to pay its bills "when due;" or was not in a

"satisfactory financial condition." Thus, the jury could not have found, on any basis other than pure speculations that the Company's representations in its contracts about those matters were actually **false**. The only way the jury could have reached such a conclusion was upon pure speculation. Rank speculation is not a proper basis for a jury verdict.

Therefore, for these reasons alone, Mr. Courtright's Rule 29 Motion with respect to all Counts should be granted.

The only arguable time period where there was any basis in the record for the jury to have reasonably even considered whether the Company was "insolvent" and/or *not* "solvent;" unable to pay its bills "when due;" or not in a "satisfactory financial condition" and/or in an unsatisfactory financial condition, was the November and December 2019 time period (just prior to the time period when the Company was shut down). However, again, because those concepts/terminology: 1) were from contracts where those terms were wholly undefined; and 2) the Government failed to provide any testimony regarding what those terms meant and how they were satisfied/not satisfied, the jury still had no basis, other than pure speculation, to conclude that the Company was *not* in a position to meet those vague and undefined contractual standards at the time the particular investments at issue in Counts I through VII were made. This is particularly true where, as here, even at the time that the November 2019 Zigler and McClure contract were executed, the Company had 2.2 million dollars on November 19, 2019 and $460,000 on November 8, 2023.[2]

---

[2] As set forth below in the discussion of the individual Counts, the Zigler and McClure transactions fail to provide a basis from which any reasonable jury could possibly concluded that the Government had met its burden of proof beyond a reasonable doubt. *See* Counts VI and VII, further addressed below.

### Payment of Guaranteed Minimum Payments From Another Site Partner's Up-Front Fee

Separate and apart from the Government's reliance upon the above-referenced contractual provisions as an attempt to prove that Mr. Courtright made false statements, the Government relied upon its contention that Mr. Courtright represented that none of the investors' monies would be used to pay the minimum monthly guarantees of other (prior) investors.

However, once again, other than generic and generalized evidence and testimony, the Government failed to prove, beyond a reasonable doubt, any particular instance (with the possible exception of November 2019) where a site partner who was the subject of the Counts in the Indictment (call it "Site Partner One") made an investment *and* where the Company subsequently made a particular payment to another identified site partner (call it "Site Partner Two") to satisfy an already existing minimum monthly guarantee obligation owed to that other identified Site Partner Two - using any of the specific monies that Site Partner One paid to the Company as its up-front fee.

Therefore, for those additional reasons alone, Mr. Courtright's Rule 29 Motion should be granted.

### The Contractual "Draw" Provisions

Eight of the eleven site partner witnesses had specific "draw" provisions" contained within their contracts with the Company. Those "draw provisions" specifically provided that the "minimum monthly guarantees" would be paid from their *own* "up-front" fees.

Thus, the Government cannot have it both ways. On the one hand, the Government contended at trial that the site partners' contracts were clear, unambiguous, and enforceable with respect to the "solvent," "pay bills when due," and "satisfactory financial condition" provisions contained within them. Yet, the Government simultaneously contended that the contracts

somehow did not mean what they said when those same contracts contained "draw provisions." There is no basis for this Court to ignore the clear and express language of the "draw provisions" contained within the site partners' contracts – just like there was no basis for the jury to ignore them.

In any event, the Government failed to present any admissible record evidence that any of those "draw provisions" were ever violated by the Company. In other words, the Government failed to prove beyond a reasonable doubt that any of the site partners whose contracts contained "draw provisions" were not paid their draws from their *own* up-front fees or that they were ever paid draws from any other site partner's up-front fees.

Accordingly, for those additional reasons, this Court should grant Mr. Courtright's Rule 29 Motion.

### Additional Arguments Applicable To The Particular Counts

In addition to the arguments set forth above that are applicable to the Counts generally, and which provide the basis for this Court to grant Mr. Courtright's Rule 29 Motion, Mr. Courtright provides the following specific arguments with respect to each Count as further bases for granting Mr. Courtright's Rule 29 Motion.

#### Count I (Parnell) (September 2017)

The evidence is support of Count I was insufficient to establish Mr. Courtright's guilt beyond a reasonable doubt.

It is undisputed that Parnell did not have any communications with Mr. Courtright *prior* to making the investment at issue in Count I. *See* Trial Transcript, at pp. 502-506.

The Government relied upon the above-referenced contractual provisions in an attempt to establish Mr. Courtright's guilt with respect to the Parnell site partner contract.

However, in so doing, the Government attempted to ignore, and more importantly have the jury ignore, the fact that Parnell's contract had a version of the "draw provision." Thus, the Government argued that:

> Gregg Parnell's agreement doesn't contain the word 'draw;' it contains a version, as the defendant said, of the draw provision for 60 years, **but Gregg Parnell didn't tell you anything about that provision.** He never told you he talked about it. He didn't tell you that he cared about it except that he wanted it to last 60 years, which it did.

*See* Trial Transcript, at pp. 1798:21-1799:1 (emphasis added).

Of course, Parnell did not reference that provision during his direct examination testimony because the Government tactically chose to ignore that provision as if it did not exist. Accordingly, the Government did not elicit any testimony at trial from Parnell about that provision. Parnell was not present at trial to "talk;" he was there only to answer the questions the Government posed to him. The Government's trial strategy does not mean the version of the "draw" provision did not exist in Parnell's contract.

In any event, the Government failed to meet its burden of proof with respect to Count I because it failed to establish that any materially false statements were made to Parnell by Mr. Courtright, including by way of failing to establish that any of Parnell's investment monies on this specific occasion were *not* used to pay his own "draw;" failing to establish that any of Parnell's investment monies on this specific occasion were subsequently paid to any *other* identified site partner to meet the Company's minimum guaranteed payment obligations under the terms of that *other* identified site partner's contract with the Company; and of course failing to establish that, *at the time Parnell entered into his agreement with the Company*, the Company was (back at this particular time period in 2018) in any way "insolvent," unable to pay its bills "when due;" or *not* in a "satisfactory financial condition." These latter facts are particularly true

where, as here, Parnell's 2017 investment was far removed from the Company's late 2019 financial issues. In sum, like all of the site partners whose transactions form the basis for the Counts, the Government never established that the statements that it was relying upon were actually **false** - that were made in connection with the particular transaction that forms the basis for this Count.

This Court should grant Mr. Courtright's Rule 29 Motion with respect to Count I.

### Count II (McClure) (November 2018)

The evidence is support of Count II was insufficient to establish Mr. Courtright's guilt beyond a reasonable doubt.

Here, McClure never spoke directly to Mr. Courtright prior to entering into the agreement that forms the basis of this Count. *See* Trial Transcript, at pp. 387-388. Furthermore, McClure admitted that, when he spoke to Mr. Courtright *after* this particular investment, McClure Mr. Courtright did *not* make any false statements to him. *Id.* at pp. 387-389.

Moreover, as noted above, the Government was unable to establish, by proof beyond a reasonable doubt, that - at the time of this 2018 investment by McClure - the Company was "insolvent," whatever that vague and undefined term meant and for which no testimony was offered in terms of a definition; 2) the Company could *not* pay its "bills when due;" 3) that the Company was *not* in a "satisfactory financial condition," whatever that vague and undefined term meant and for which no testimony was offered in terms of a definition. This was particularly true where, as here, McClure's 2018 investment was far removed from the Company's late 2019 financial issues. Nor could McClure offer any of his own testimony to establish any of those propositions. In sum, the Government once again failed to offer any evidence from which any reasonable juror could possibly conclude that Mr. Courtright's s

statements (including those contained within McClure's contact) were actually **false** –
*and* which were made in connection with the particular transaction that forms the basis
for this Count.

In addition, the Government was unable to establish, by proof beyond a reasonable
doubt: 1) that any money invested by McClure on this particular occasion was *not* used by the
Company for purposes of the purchase, building, hosting, maintenance, or marketing of the
websites that were the subject of this particular investment; 2) that any of the specific monies
invested by McClure on this particular occasion was used by the Company to pay the minimum
monthly guarantee for some other site partner. In other words, again, the Government failed to
offer any evidence from which any reasonable juror could possibly conclude that Mr.
Courtright's statements (including those contained within McClure's contact) were actually
**false** - in connection with the particular transaction that forms the basis for this Count.

This Court should grant Mr. Courtright's Rule 29 Motion with respect to Count II.

***Count III (Turco July 2015)***

The evidence is support of Count III was insufficient to establish Mr. Courtright's guilt
beyond a reasonable doubt.

Here, with respect to the transaction at issue in Count III, Turco admitted that he had no
basis for claiming that Mr. Courtright made any false statements to him in connection with it.
*See* Trial Transcript, at p. 288:16-20.

Moreover, despite the Government's arguments, even Turco himself admitted that the
Company was in fact "probably solvent" at the time that he made this particular investment. *Id.*
at p. 289:4-6. In addition, as noted above, neither Turco nor anyone else was able to provide any
testimony or evidence that the Company was unable, at the time of this particular investment,

to pay its bills "when due" or was otherwise in any sort of "unsatisfactory" financial condition. *Id.* at p. 290:7-14 (Turco admitting that he had no knowledge to support any conclusion that the Company was unable to pay its bills "when due," that it had any financial problems, or that it was not otherwise in a "satisfactory" financial condition).

Of course, just like every other investor that is the subject of Counts I through VII, neither Turco nor any other Government witness was able to provide any evidentiary basis from which any jury could reasonably find that any of the particular funds Turco provided on this occasion were *not* subsequently used in the manner contemplated by the parties' contract, or that those particular funds were ever used to pay any other investor's guaranteed monthly minimum.

In short, the Government failed to provide any evidence from which any reasonable juror could possibly conclude that Mr. Courtright made any statements or representations that were actually **false** - in connection with the particular transaction that forms the basis for this Count.

This Court should grant Mr. Courtright's Rule 29 Motion with respect to Count III.

### *Counts IV and V (Brashear – July 2019)*

Like the rest of the investors whose transactions are the subjects of the various Counts, the Government did not provide any admissible evidence from which any reasonable jury could possibly conclude, based upon anything other than speculation, that any statements or representations made by Mr. Courtright were actually **false**.

Again, the Government failed to establish that, at the time of Brashear's investments that are the subject of Counts IV and V, the Company was "insolvent," could not pay its bills "when due," or was *not* in a "satisfactory" financial condition.

Likewise, just like every other investor that is the subject of Counts I through VII,

neither Brashear nor any other Government witness was able to provide any evidentiary basis from which any jury could reasonably find that any of the particular funds Brashear provided on the occasion underlying these Counts were *not* subsequently used in the manner contemplated by the parties' contract, or that those particular funds were ever used to pay any other investor's guaranteed monthly minimum.

Once again, the Government failed to provide any evidence from which any reasonable juror could possibly conclude that Mr. Courtright made any statements or representations that were actually **false** in connection with the particular transaction that forms the basis for this Count.

This Court should grant Mr. Courtright's Rule 29 Motion with respect to Counts IV and V.

### Count VI (Zigler November 2019)

Here, Zigler admitted that he did *not* have any communications with Mr. Courtright in connection with this particular investment. *See* Trial Transcript, at pp. 539-540. More importantly, Zigler testified that Mr. Courtright did *not* make any material misrepresentations or false statements to him. *Id.* at p. 549. If all of that were not enough to establish that the Government wholly failed to provide any admissible and non-speculative record evidence upon any reasonable could possibly find that the Government had met its burden with respect to this Count, Zigler also admitted that this particular investment decision was his fault and responsibility. *Id.* at p. 546.

This Court should grant Mr. Courtright's Rule 29 Motion with respect to Count II.

### Count VII (McClure November 2019)

The evidence is support of Count VII was insufficient to establish Mr. Courtright's guilt

beyond a reasonable doubt.

Here, McClure was told - *prior* to this particular investment - by the CEO David Kelley ("Kelley") that the Company was "in huge trouble and its financial condition did not look good." *See* Trial Transcript, at p. 394. McClure further admitted that Kelley was *not* confident in the Company at this time, and that Kelley's pre-investment communications "did *not* give him [McClure] comfort." *Id.* at p. 395 (emphasis added); *see also* Kelley testimony, at p. 1135 (admitting that he warned McClure of the Company's cash flow issues before McClure made this investment).

Accordingly, there was absolutely no basis upon which any jury could have reasonably found that there was any record evidence to support any inference that Mr. Courtright or anyone made a misrepresentation with respect to the Company's financial condition - in connection with the particular transaction that forms the basis for this Count.

The only allowable inference was that which was made clear by both McClure's and Kelley's testimony, i.e., that McClure inexplicably chose to make the investment that was the subject of Count VII even though he knew of, and accepted, the fact that the Company was in dire financial circumstances. *Id.* at p. 1137:1-2.

In sum, Mr. Courtright did not make a statement that was **false** in connection with this p particular transaction, nor did he make such a statement that was material to this particular transaction.

This Court should grant Mr. Courtright's Rule 29 Motion with respect to Count VII.

**WHEREFORE**, Defendant, Mr. Courtright, by and through his undersigned counsel, respectfully requests the entry of an Order vacating the jury verdict on all Counts; for the entry of an Order granting him acquittal with respect to each of those Counts; for the entry an Order

granting judgment in his favor with regard to all Counts; and for such other and further relief as is appropriate.

**RESPECTFULLY SUBMITTED,**

**By:** **s/Michael I. Leonard**
**Counsel for Mr. Courtright**

**LEONARD TRIAL LAWYERS LCC**
Michael I. Leonard
Matthew Chiavari
120 N. LaSalle Street, 20th Floor
Chicago, Illinois 60602
312-380-6559(office)
312-264-0671 (fax)
mleonard@leonardtriallawyers.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned states that, on September 1, 2023, he caused the above to be served on all counsel of record by way of ECF filing.

**RESPECTFULLY SUBMITTED,**

**By:**   <u>**s/Michael I. Leonard**          </u>
          **Counsel for Mr. Courtright**